NO. 07-02-0527-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 2, 2004


______________________________



JEROME NELSON, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-438,441; HON. JIM BOB DARNELL, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Appellant Jerome Nelson contests his conviction for aggravated robbery in seven
issues. (1) We affirm the judgment. 

Background


 On October 25, 2000, Robert Roberson was working as manager of a Town and
Country convenience store in Lubbock. While talking to one or more customers, he
observed two black men walk by outside the store. Soon thereafter, the same two men
entered the store and walked straight to the counter. When Roberson asked how he could
help them, appellant placed a handgun on the counter and pointed it at Roberson. The
other robber then walked behind the counter in search of and taking whatever money he
could find. Both men left the store, and Roberson called the police. 

 Based upon information obtained from an informant, an arrest warrant was issued
for both appellant and his compatriot. The warrant was executed, and after his arrest,
appellant gave a written statement inculpating himself. 

Issue One - Probable Cause for Affidavit


 In his first issue, appellant argues that his arrest violated the federal and state
constitutions. This is allegedly so because the affidavit accompanying the application for
the arrest warrant failed to show probable cause, and it failed to show probable cause
since it lacked information establishing the informant's reliability. We overrule the issue
for several reasons.

 First, in support of his contention, appellant relies extensively on evidence
developed at a hearing upon his motion to suppress. Yet, that evidence is irrelevant. This
is so because, when determining the existence of probable cause, our review is limited to
the four corners of the affidavit supporting the request for the warrant and the reasonable
inferences that can be drawn from it. Lagrone v. State, 742 S.W.2d 659, 661 (Tex. Crim.
App. 1987), cert. denied, 485 U.S. 937, 108 S.Ct. 1115, 99 L. Ed.2d 276 (1988); State v.
Ozuna, 88 S.W.3d 307, 310 (Tex. App.-San Antonio 2002, pet. ref'd). So, we cannot
consider the evidence tendered at the hearing.

 Next, to be adequate, the affidavit must provide a magistrate with sufficient
information to conclude that probable cause exists to believe the accused committed an
offense. McFarland v. State, 928 S.W.2d 482, 509 (Tex. Crim. App. 1996), cert. denied,
519 U.S. 1119, 117 S.Ct. 966, 136 L. Ed.2d 851 (1997); Brooks v. State, 76 S.W.3d 426,
431 (Tex. App.-Houston [14th Dist.] 2002, no pet.). While probable cause requires more
than mere suspicion, the affiant need not present evidence establishing the suspect's guilt
beyond reasonable doubt or by a preponderance of the evidence. Moss v. State, 75
S.W.3d 132, 138 (Tex. App.-San Antonio 2002, pet. ref'd). He need only illustrate that
there is a reasonable probability that the accused committed an offense. And, whether that
standard has been met depends upon the totality of the circumstances. Id. at 138; Boley
v. State, 16 S.W.3d 95, 97 (Tex. App.-Houston [1st Dist.] 2000, no pet.). Furthermore, two
of the circumstances to be considered when the affiant grounds his statements on
representations by an informant are the reliability or veracity of the informant and the basis
of his knowledge. State v. Ozuna, 88 S.W.3d at 310; Martin v. State, 67 S.W.3d 340, 344
(Tex. App.-Texarkana 2001, pet. ref'd). Though being two considerations, they are not
independent requirements of a valid affidavit, however. State v. Ozuna, 88 S.W.3d at 310. 
In other words, both need not be proved for the affidavit to be valid. Additionally, a
deficiency in one may be offset by a strong showing of the other. Martin v. State, 67
S.W.3d at 344. With this said, we turn to the situation before us.

 As described in the affidavit and its attachments presented to the magistrate, the
informant identified, by name, each robber who appeared on the tape of the Town and
Country robbery. So too did he not only describe who actually owned the jacket being
worn by one of the suspects but also told the affiant that he (the informant) was "present
when [the] suspects bragged about doing this robbery." Authority assigns greater weight
to an informant's utterances when he personally observed the act which he discloses. See
State v. Ozuna, 88 S.W.3d at 310 n.1, citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct.
2317, 76 L.Ed.2d 527 (1983) (stating that ". . . even if some doubt exists as to an
informant's motives, his explicit and detailed description of alleged wrongdoing, along with
a statement that the event was observed first-hand, entitles the tip to greater weight than
might otherwise be the case"). And, though the informant at bar may not have personally
witnessed the actual robbery by appellant and his partner, he nonetheless personally heard
them admit to it through their braggadocio. So his reiteration of the admission is entitled
to greater weight. 

 Moreover, the comment not only illustrates the basis of his knowledge about who
committed the offense but also provides additional grounds illustrating why he was able to
identify each robber seen in the video; simply put, he knew who they were because, among
other things, he was present when they bragged about committing the offense. To this,
we add his identification of the true owner of the coat worn by one malfeasant, which
evidence in turn supports the inference that he had some other personal acquaintance with
the robbers. So, in short, this rather strong evidence illustrating the basis of the informant's
knowledge offsets any lack of evidence in the affidavit regarding his reliability. (2) 

 Finally, when someone brags about committing a particular criminal act and that
admission is relayed to an independent magistrate via affidavit, it is within the realm of
common sense to conclude that there exists a reasonable chance that the braggart did that
about which he brags. So, we cannot say the affidavit at bar lacked adequate basis to
support an inference that there existed a reasonable probability that appellant committed
the robbery. In other words, we cannot accept the proposition that the affidavit failed to
demonstrate sufficient probable cause to arrest appellant. 

Issue Two - Ineffective Assistance of Counsel


 In his second issue, appellant attacks the trial court's failure to grant his motion for
new trial due to the ineffectiveness of his trial counsel. That is, because his attorney
allegedly failed to object to an in-court identification of appellant by Roberson, counsel was
deficient. Furthermore, the identification was allegedly objectionable because the
prosecutor showed Roberson photos of the appellant and his accomplice shortly before
trial. This purportedly constituted an unreasonably suggestive photo array. We overrule
the point.

 Among other things, the record illustrates that neither defense counsel nor the trial
court were aware of the suggestive photo array having been shown to Roberson until after
he identified appellant at trial. Having been unaware of the circumstance, counsel can
hardly be faulted for withholding objection to conduct of which he knew not. 

 Moreover, even if trial counsel uttered no objection, the trial court nonetheless
conducted a hearing to determine the legitimacy and effect of the photo spread. It did so
after trial counsel discovered, through cross-examining Roberson, that the latter had been
shown the pictures. And, though the trial court held that the spread was impermissibly
suggestive, it nonetheless concluded that the procedure did not taint Roberson's
identification of appellant. So, appellant actually was afforded that which his counsel
supposedly failed to obtain for him, i.e. an opportunity to contest the validity of both the
State's conduct and Roberson's identification. Thus, we find no prejudice, especially in
view of appellant's own admission of guilt via a statement given to the police and admitted
into evidence. 

Issue Three - Brady Violation


 The prosecutor's conduct alluded to in issue number two also underlies the
complaint raised in issue three. There, appellant alleges that the State violated the rule
of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), since it
failed to disclose, prior to trial, that photographs of appellant and his accomplice had been
shown to Roberson immediately before trial. We overrule the issue for several reasons.

 First, and assuming arguendo that the prosecutor's conduct evinced a Brady
violation, the appellant was obligated to request a continuance. His failure to do so
resulted in a waiver of the complaint. Taylor v. State, 93 S.W.3d 487, 502 (Tex.
App.-Texarkana 2002, no pet.); State v. DeLeon, 971 S.W.2d 701, 706-07 (Tex.
App.-Amarillo 1998, pet. ref'd); Cohen v. State, 966 S.W.2d 756, 763 (Tex.
App.-Beaumont 1998, pet. ref'd). 

 Second, before reversal of the conviction is warranted under Brady, the defendant
must establish that in light of all the evidence, it is reasonably probable that the outcome
of the trial would have been different if the evidence had been disclosed. Hampton v.
State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Here, appellant gave the police a
statement wherein he admitted to committing the offense, and the statement was received
into evidence. Appellant having admitted his culpability, it was and is highly unlikely that
disclosure of the State's conduct prior to trial would have created a reasonable probability
that the outcome would have differed. See Medina v. State, 743 S.W.2d 950, 958 (Tex.
App.-Fort Worth 1988, pet. ref'd) (finding the information touching upon the issue of
identity immaterial because the appellant admitted to shooting the victims). Indeed, that
appellant inculpated himself also removed from question the topic of identity. The latter,
therefore, was immaterial for Brady purposes. Id. 

Issues Four, Five and Six - Deadly Weapon Issues


 Via his next three issues, appellant argues, in effect, that the evidence was both
legally and factually insufficient to support the jury's finding that he used or exhibited a
deadly weapon during the robbery, i.e. that he committed aggravated robbery. We
overrule the issues.

 The State charged appellant with having used and exhibited a deadly weapon, the
latter being a firearm. Before us, appellant argues that the State failed to prove this
allegation since it presented no evidence that the item utilized was capable of causing
death or serious bodily injury. Yet, the record contains some evidence upon which a jury
could rationally conclude beyond reasonable doubt that the appellant actually exhibited a
handgun or firearm; indeed, Roberson described the weapon as a "semiautomatic pistol." 
And, since a firearm or handgun is a deadly weapon per se, Lafleur v. State, 106 S.W.3d
91, 99 (Tex. Crim. App. 2003); Arthur v. State, 11 S.W.3d 386, 389 (Tex. App.-Houston
[14th Dist.] 2000, pet. ref'd), the State was not required to tender evidence illustrating that
the weapon was capable of causing death or serious bodily injury. Thomas v. State, 821
S.W.2d 616, 619-20 (Tex. Crim. App. 1991). 

 As for the statement by appellant that the weapon was not a firearm at all but rather
a BB gun, we do not find it of such ilk to render the verdict factually insupportable. (3) Again,
Roberson testified that the weapon was a semiautomatic pistol and that he believed it to
be a real gun that could kill him. So too did an officer testify that the weapon "was a
handgun," though he also conceded that a BB gun could look like a handgun and that he
did not know if the weapon was actually a firearm or a BB gun. Thus, the jury had before
it a disputed issue of fact. And, in resolving the matter, it could have opted to disbelieve
appellant's testimony and instead accept that illustrating the weapon to be an actual
firearm. See Edwards v. State, 10 S.W.3d 699, 701-02 (Tex. App.-Houston [14th Dist.]
1999, pet. dism'd) (holding that testimony from the victims that the defendant used a gun
that resembled a Colt .45 handgun rather than a BB gun allowed the jury to make a
reasonable deduction that the gun was a firearm).

 In short, the finding that appellant used or exhibited a deadly weapon in the robbery
enjoys the support of both legally and factually sufficient evidence. And, because it does,
the finding that he committed aggravated robbery (as opposed to mere robbery) also is
supported by both legally and factually sufficient evidence. 

Issue Seven - False or Reckless Statements in Affidavit


 Finally, in his seventh issue (presented via a supplemental brief), appellant again
attacks the legitimacy of the arrest warrant. This time, however, he posits that it should
have been invalidated since it was obtained through the intentional or reckless use of false
statements. The latter were purportedly uttered by Detective Sutton, the detective to whom
the informant identified appellant and his accomplice. Furthermore, the statements were
supposedly false since the informant later denied identifying the individuals and the video
tape was not of such quality and kind to permit one to see and, thereby, identify the people
captured on it. We overrule the issue.

 The statements referred to appear in a report attached to the affidavit discussed in
issue one above. They consist of the following:

 On 11-28-01 this investigator received information through S.I. (01-03) that
provided information to the identity of the suspects in this case.


 S. I. . . . advised that the identity of the suspects are Jason Lawson and
Jerome Nelson. S.I. . . . viewed the video tape that was obtained in this case
and positively identified the suspects in this case.


 S.I. . . . also informed this investigator that Jason Lawson was the person
who went behind the counter with the clerk. He stated that the white jacket
worn in the video has the words 'FUBU' on the back. The jacket belongs to
Alvin Lawson but Jason Lawson is the one wearing it. The subject was also
wearing a red cap. The stocky suspect at the counter holding the gun is
identified as Jerome Nelson. S.I. . . . advised this subject is a parolee. 


 S.I. . . . informed that they were present when suspects bragged about doing
this robbery. S.I. . . . advised suspects are robbing various businesses
throughout Lubbock. S.I. . . . said Jerome Nelson is wearing white and blue
FUBU shoes in the video. . . .


As can be seen from them, Sutton simply indicated that the S.I. saw the video. Nowhere
in it did he state that the S.I. identified the suspects solely from the images appearing on
it or that one could identify the suspects merely from their appearance in the video. 
Indeed, the officer actually testified, at a later hearing, that the informant had provided him
with the information about how the robbery occurred and who went behind the counter
before being shown the tape. (4) So too did he testify that despite the quality of the tape, it
would have provided sufficient information to identify the suspects if the viewer already
knew them. This coupled with his other testimony that the informant stated he had been
told by the suspects that they had committed the robberies, that the informant then
watched the video and recognized the clothing, build, and features of the suspects, and
that the informant stated: "[t]hat is them. I [would] know them anywhere" could reasonably
lead one to conclude that the informant was not identifying the suspects due to what he
saw in the video. Rather, it could be reasonably deduced that the informant could identify
them due to his prior knowledge about the offense, who committed it, and what the culprits
were wearing at the time. 

 Sutton did concede, at the hearing, that he did not believe the shoes appellant was
wearing were visible in the tape, though the informant said appellant was wearing them. 
Yet, there is no showing that the officer knew of or should have noticed the discrepancy
between the informant's statement and the contents of the tape when writing his report. 
See Dancy v. State, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987), cert. denied, 484 U.S.
975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (holding that a misstatement resulting from
negligence or inadvertence does not render a warrant invalid); Brown v. State, 831 S.W.2d
847, 848 (Tex. App.-Dallas 1992), aff'd, 870 S.W.2d 53 (Tex. Crim. App. 1994) (holding
the same).

 Next, and to the extent that the informant later denied making the identification, the
circumstance raised an issue of credibility. That is, the trial court became obligated to
decide who to believe. And, since this was a matter of a witness' credibility, we must defer
to the selection made by the trial court. See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997) (requiring us to defer to the trial court's credibility choices). And, the trial
court obviously selected Officer Sutton.

 In sum, appellant failed to establish by a preponderance of the evidence that
Sutton's statement with respect to the informant's identification was intentionally false or
made with reckless disregard for the truth. Thus, we again hold that the trial court did not
abuse its discretion in overruling appellant's motion to suppress. 

 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn 

 Justice 

 

Do not publish.

1. The seventh issue is presented for the first time in appellant's supplemental brief.
2. This is not to suggest that the affidavit was devoid of all evidence tending to paint the informant as
reliable. Indeed, one can reasonably infer from the affidavit that he was in the presence of the police when
the identification was made. A face-to-face meeting such as this is an indicia suggestive of credibility since
the officer may then readily identify the informant should his utterances prove deceitful. United States v.
Jenkins, 313 F.3d 549, 554-55 (10th Cir. 2002) cert. denied, 538 U.S. 1006, 123 S.Ct. 1917, 155 L.Ed.2d 838
(2003).
3. The weapon does not appear as an exhibit in the appellate record.
4. Appellant attempted to establish at trial that the video had been released to the press and the
informant could have viewed the video prior to talking to police. However, the informant denied to police that
he had previously seen the robbery. 


y; line-height: 0.416667in; margin-bottom: 0.104167in">          The City contends, in the alternative, that Oncale imposes an additional element on
a claim for same-sex sexual harassment. According to the City’s interpretation of Oncale,
a same-sex sexual harassment plaintiff must prove each element of a sexual harassment
claim and also establish that (1) the alleged harasser made explicit or implicit proposals
of sexual activity and the harasser is homosexual, (2) the harasser was motivated by
general hostility to the presence of members of the same sex in the workplace, or (3) the
alleged harasser treated members of both sexes differently. To support its contention, the
City cites the following paragraph from Oncale:
Courts and juries have found the inference of discrimination easy to draw in
most male-female sexual harassment situations, because the challenged
conduct typically involves explicit or implicit proposals of sexual activity; it is
reasonable to assume those proposals would not have been made to
someone of the same sex. The same chain of inference would be available
to a plaintiff alleging same-sex harassment, if there were credible evidence
that the harasser was homosexual. But harassing conduct need not be
motivated by sexual desire to support an inference of discrimination on the
basis of sex. A trier of fact might reasonably find such discrimination, for
example, if a female victim is harassed in such sex-specific and derogatory
terms by another woman as to make it clear that the harasser is motivated
by general hostility to the presence of women in the workplace. A same-sex
harassment plaintiff may also, of course, offer direct comparative evidence
about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he
or she must always prove that the conduct at issue was not merely tinged
with offensive sexual connotations, but actually constituted “discrimination
. . . because of . . . sex.” 
Oncale, 523 U.S. at 80-81 (emphasis added). One of the elements of a claim for sexual
harassment under the TCHRA is that the harassment was based on sex. Green v. Indus.
Specialty Contractors, Inc., 1 S.W.3d 126, 131 (Tex.App.–Houston [1st Dist.] 1999, no pet.). 
Thus, rather than identifying an additional element required for a claim of same-sex
harassment, we construe the quoted portion of Oncale as identifying examples of
“evidentiary route[s]” by which a plaintiff could prove this element of its sexual harassment
claim.
          We overrule the City’s eighth issue.
Legal Sufficiency of Sexual Harassment Evidence
          By its first issue, the City contends that the evidence is legally insufficient to support
the jury’s finding that Cancel was subjected to sexual harassment. To prove a claim of
hostile work environment sexual harassment, plaintiffs must show that: (1) they belong to
a protected group; (2) they were subjected to unwelcome sexual harassment; (3) the
harassment was based on sex; (4) the harassment complained of affected a term,
condition, or privilege of employment; and (5) the employer knew or should have known
of the harassment and failed to take remedial action.


 Id.; Garcia v. Schwab, 967 S.W.2d
883, 885 (Tex.App.–Corpus Christi 1998, no pet.); Soto v. El Paso Natural Gas Co., 942
S.W.2d 671, 678 (Tex.App.–El Paso 1997, writ denied). 
          Cancel had the burden of proof on the issue of whether Martinez’s harassment
created a hostile work environment. In reviewing a legal sufficiency challenge to a jury
verdict, we must consider only the evidence and inferences that tend to support the finding,
disregarding any evidence or inference to the contrary. Sw. Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). We may sustain a legal insufficiency issue only
when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or
(4) the evidence conclusively establishes the opposite of the vital fact. City of Houston,
166 S.W.3d at 488 (citing Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997)). If there is any evidence of probative force to support the finding, we must overrule
the legal insufficiency challenge. Id.



          Cancel made no allegation that he was subjected to quid pro quo harassment,
rather, Cancel contended that Martinez’s sexual harassment created a hostile or abusive
work environment. To have an actionable claim for hostile work environment sexual
harassment, a plaintiff must show that the workplace was permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a hostile
or abusive working environment. Garcia, 967 S.W.2d at 885 (citing Meritor Sav. Bank,
FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The work
environment must be both objectively and subjectively made hostile or abusive by the
discriminatory conduct. City of Houston, 166 S.W.3d at 489; Garcia, 967 S.W.2d at 885
(citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). 
In assessing the objective hostility or abusiveness of harassment, we must view the
discriminatory conduct from the perspective of a reasonable person in the plaintiff’s
position in the same circumstances. Garcia, 967 S.W.2d at 886. In determining whether
a work environment is sufficiently hostile or abusive, we must review the totality of the
circumstances, including the frequency of the discriminatory conduct; its severity; whether
the conduct was physically threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interfered with the employee’s work performance. City of
Houston, 166 S.W.3d at 489; Green, 1 S.W.3d at 131-32 (citing Harris, 510 U.S. at 23). 
A hostile work environment claim is designed to address conduct that is so severe or
pervasive that it destroys an employee’s opportunity to succeed in the workplace. City of
Houston, 166 S.W.3d at 490. The critical inquiry is the environment: evidence of general
work atmosphere as well as specific instances of hostility or abuse are important. Wal-Mart Stores, Inc. v. Itz, 21 S.W.3d 456, 473 (Tex.App.–Austin 2000, pet. denied); Soto, 942
S.W.2d at 678. Single incidents should not be viewed in isolation, as it is the cumulative
effect of offensive behavior that creates the work environment. Wal-Mart Stores, Inc., 21
S.W.3d at 473. “All of the sexual hostile environment cases decided by the Supreme Court
have involved patterns or allegations of extensive, longlasting, unredressed, and
uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.” 
Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (citing Faragher, 524
U.S. 775; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d
633 (1998); Oncale, 523 U.S. 75; Harris, 510 U.S. 17; Meritor Sav. Bank, 477 U.S. 57).



          In the present case, considering only the evidence and inferences that tend to
support the jury’s hostile environment sexual harassment finding and disregarding any
evidence to the contrary, Sw. Key Program, 81 S.W.3d at 274, leaves us with the following
facts. Martinez repeatedly suggested that Cancel take off his clothes as therapy for his
depressed state. Martinez told Cancel that he had model potential and Martinez implied
that he could help Cancel get into modeling because of the people that he knows. 
Martinez asked Cancel to lift his shirt while, at the same time, Martinez “kept messing with
his pants area.” Martinez asked Cancel if he had ever received or given a lap dance. 
Finally, when Cancel said that he needed to get back to work, Martinez offered Cancel his
phone number. All of these events occurred during this single meeting that lasted
approximately 20 to 30 minutes.
          Using the guidelines provided by Harris, our review of the evidence for the frequency
of the offensive conduct, its severity, the presence of physical threat or humilation, and
unreasonable interference with Cancel’s ability to work leads us to conclude, as a matter
of law, that Cancel was not subjected to such frequent or severe sexual harassment that
would create a hostile or abusive work environment to a reasonable person in Cancel’s
position. Martinez’s repeated suggestion that Cancel take off his clothes, when taken in
context, was boorish and offensive, but not so severe as to alter a term, condition, or
privilege of employment. Martinez’s statement that Cancel had model potential, in another
context, could be considered complementary, however, in the context in which this
offhanded comment was made, it was inappropriate, but not severe enough to constitute
harassment. The more sexually charged discussion of lap dances and the fact that
Martinez “kept messing with his pants area” was ill-mannered and certainly not appropriate
for the workplace, but was not so severe as to alter Cancel’s work environment. Finally,
the only evidence of the reason that Martinez offered his phone number to Cancel was in
case Cancel should need anything and not as a sexual advance. Even when the totality
of Martinez’s conduct is considered cumulatively, Wal-Mart Stores, Inc., 21 S.W.3d at 470,
the conduct was not so severe or pervasive as to affect the terms, conditions, and
privileges of Cancel’s employment. We conclude that, as a matter of law, the inappropriate
conduct of Martinez in a single 20 to 30 minute meeting in which Martinez did not
proposition, touch, threaten, or publically humiliate Cancel was not so severe or pervasive
that it would have destroyed a reasonable person’s opportunity to succeed in the
workplace. Harris, 510 U.S. at 22; City of Houston, 166 S.W.3d at 489; Garcia, 967
S.W.2d at 885.
          However, Cancel contends that we must consider the general work atmosphere and
this requires consideration of the cumulative effect of all offensive behavior that creates the
work environment, including the discovery of pornographic photos on Martinez’s computer
in 2004. The City contends that Cancel was unaware of this incident until discovery in the
present case and, therefore, it was not relevant to Cancel’s claim. However, single
incidents should not be viewed in isolation because it is the cumulative effect of all
offensive behavior that creates the work environment. Wal-Mart Stores, Inc., 21 S.W.3d
at 470. However, even considering this incident, the evidence establishes only that there
were two isolated instances of sexually offensive behavior over a one and a half to two
year period. Further, the evidence regarding the pornographic pictures is that only one
employee of the airport was aware of this incident until after discovery was conducted in
Cancel’s present action. We conclude that, as a matter of law, the total evidence of
sexually offensive behavior was not so severe or pervasive as to create a hostile or
abusive work environment from the perspective of a reasonable person in Cancel’s position
and certainly did not establish that “the workplace is permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a
discriminatorily hostile or abusive working environment.” Garcia, 967 S.W.2d at 885.
          Because our review of the evidence indicates that Cancel failed to present at least
a scintilla of evidence to support his claim of hostile work environment sexual harassment,
we affirm the City’s first issue and reverse the trial court’s judgment.
Conclusion
          We reverse the judgment of the trial court and render judgment that Cancel take
nothing by his claims.
                                                                           Mackey K. Hancock

                                                                                      Justice