**Debra Elaine GARCIA, Appellant,**

v.

**Paul SCHWAB and Valley Mortgage Company, Appellees.**

No. 13–96–431–CV.

Court of Appeals of Texas, Corpus Christi.

April 2, 1998.

Aaron Pena, Jr., Kathleen Henley, Aaron Pena & Associates, L. Aron Pena, Law Offices of L. Aron Pena, Edinburg, for Appellant.

M. Steven Deck, Law Office of John King, John Robert King, McAllen, for Appellees.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

Appellant Debra Garcia filed suit in Hidalgo County district court against Paul Schwab and the Valley Mortgage Company ("Valley Mortgage"), her former manager and employer, claiming sexual harassment [1] and intentional infliction of emotional distress. Defendants moved for summary judgment claiming Garcia's allegations did not rise to the level of sexual harassment, either as *quid pro quo* or hostile work environment, and did not amount to the outrageous conduct necessary for the intentional infliction of emotional distress. The trial court granted summary judgment on all causes of action. Garcia challenges only the trial court's holding regarding her hostile work environment sexual harassment cause of action against Valley Mortgage. We affirm.

In January 1994, Valley Mortgage hired Garcia as a loan officer. Paul Schwab is president and general manager of Valley Mortgage. Garcia's immediate supervisor

---

1. Tex. Labor Code Ann. § 21.051 (Vernon 1996).

was Belinda Garza. Schwab, however, participated in Garcia's training and was in day-to-day contact with her. Garcia alleges Schwab, in the course of her dealings with him, offended her by: staring at and commenting on her breasts; touching his genitals; frankly discussing highly personal and sexual matters with her; remarking on her appearance; staring at and commenting on the photograph of a female client; commenting on the appearance of other women; making repeated sexual references which she felt were intended to arouse her; insulting her and yelling at her.

Garza fired Garcia for incompetence following several counseling sessions during which Garza informed Garcia her training progress was insufficient. In compliance with the labor code, Garcia filed a complaint with the Texas Commission on Human Rights, which certified her civil action in district court. Defendants filed special exceptions to Garcia's original petition complaining she alleged no facts or insufficient facts to justify recovery. After Garcia amended her pleadings, the defendants moved for summary judgment on all grounds, again asserting Garcia could not recover as a matter of law. The trial court agreed and this appeal ensued.

█ Under the Texas Commission on Human Rights Act, it is unlawful for an employer to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin. TEX. LABOR CODE ANN. § 21.051 (Vernon 1996) (formerly TEX.REV.CIV. STAT. ANN. art. 5221k, § 5.01(1)). The Human Rights Act is modeled on federal law for the purpose of executing the policies embodied in Title VII of the federal Civil Rights Act of 1964. See TEX. LABOR CODE ANN. § 21.001 (Vernon 1996). One form of employment discrimination is sexual harassment, which is generally divided into two categories: *quid pro quo* harassment [2] or hostile work environment harassment. *Ewald v. Wornick Family Foods Corp.*, 878 S.W.2d 653, 658

(Tex.App.—Corpus Christi 1994, writ denied); *Syndex Corp. v. Dean*, 820 S.W.2d 869, 871 (Tex.App.—Austin 1991, writ denied).

█ The hostile work environment form of sexual harassment includes the following elements: (1) the plaintiff belongs to a protected group, (2) the plaintiff was subject to unwelcome sexual harassment, (3) the harassment complained of was based upon sex, (4) the harassment complained of affected a "term, condition, or privilege" of employment, and (5) the employer knew or should of known of the harassment and failed to take remedial action. *Ewald*, 878 S.W.2d at 659 (citing *Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir.1982)). The United States Supreme Court set out the applicable standard in *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986): Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. *Id.* at 64, 67, 106 S.Ct. at 2405–406. This standard takes a middle path between making actionable any conduct that is "merely offensive and requiring the conduct to cause tangible psychological injury." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Conduct that is not severe enough to create a work environment that a reasonable person would find hostile or abusive will not trigger Title VII (or its Texas equivalent). *Id.* at 22, 114 S.Ct. at 370–71. Also, if the victim does not subjectively find the environment abusive, the conduct has not altered the conditions of the victim's employment, and no cause of action arises. *Id.* Whether an environment is "hostile" or "abusive" can be determined only by reviewing all the circumstances; including the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

**2.** *Quid pro quo* harassment involves those situations in which a tit-for-tat condition is imposed; that is, sexual favor is made a condition of employment, advancement, or special favor associated with employment.

work performance. *Id.* at 23, 114 S.Ct. at 371.

In its most recent pronouncement on the subject, the Supreme Court, through Justice Scalia, wrote:

The prohibition of harassment on the basis of sex ... forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370. We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as ... intersexual flirtation—for discriminatory "conditions of employment."

[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371.[T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by the target.... The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing ... and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Serv., Inc.,* — U.S. —, at —, 118 S.Ct. 998, at 1003, 140 L.Ed.2d 201, at 208 (1998).

■ As Judge Edith Jones stated for the majority in *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995), a claim of a sexually hostile work environment is not a trivial matter. To find merit in a hostile environment claim, we must conclude the conduct complained of expresses extreme insensitivity against women

and is so egregious in nature as to alter the conditions of employment and destroy women's equal opportunity in the workplace. *Id.* A less onerous standard, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality and, further, would insulate women, mandating not equality but preference. *Id.*

To prevail on its motion for summary judgment, Valley Mortgage was required to prove there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *see* TEX.R. CIV. P. 166a(c). When we review a summary judgment, we accept as true all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon,* 690 S.W.2d at 549. As the defendant, Valley Mortgage was entitled to summary judgment only if it conclusively negated at least one element of Garcia's cause of action or conclusively established all of the elements of an affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Hartman v. Urban,* 946 S.W.2d 546, 548 (Tex.App.—Corpus Christi 1997, no writ).

■ In the case at hand, the trial court granted Valley Mortgage's motion without specifying the grounds it relied on; therefore, we will review Valley Mortgage's motion and summary judgment evidence for any valid theory justifying the trial court's action. At the outset, Garcia contends the trial court erred in granting Valley Mortgage's motion regarding her hostile work environment cause of action because Valley Mortgage did not move for summary judgment on this count in its motion. We find this to be untrue. While Valley Mortgage's motion, evidence, and argument focus primarily on Garcia's *quid pro quo* claim, we find the summary judgment motion sufficiently raises a challenge to Garcia's hostile work environ-

ment claim to warrant the trial court's consideration of that issue. Under the heading "Basis For Summary Judgment Motion," Valley Mortgage bases its motion "on the fact that the acts which Schwab allegedly committed, which acts are denied, do not rise to the level of sexual harassment...." Considering the vague nature of Garcia's pleadings regarding her sexual harassment claims, we find Valley Mortgage's motion fairly challenges Garcia's hostile work environment cause of action.

Valley Mortgage complained, in its initial answer, through myriad special exceptions, in its motion for summary judgment, and through its brief to this Court, of Garcia's failure to articulate a claim of hostile work environment as a cause of action. Valley Mortgage bases its argument on Garcia's citation of her firing as evidence of harm suffered. Valley Mortgage contends such harm predicates a *quid pro quo* cause of action. While we agree Garcia's firing is evidence applicable only to *quid pro quo* sexual harassment, we do not agree such a claim precludes Garcia's charge of hostile work environment sexual harassment. We look to the summary judgment record to determine whether Garcia effectively pleaded the elements of hostile work environment irrespective of her firing.

■ Garcia's pleadings clearly contain sufficient allegations to suggest a hostile work environment cause of action: she is a member of a protected class (in the case of sexual harassment, the "protected class" Garcia belongs to is the enormous class of working women), she claims to have been the subject of unwelcome treatment based on her sex, such treatment—if rising to the level of harassment would affect her condition of employment, and she alleges facts indicating such treatment should reasonably have been known by her employer. We hold Garcia pleaded both hostile work environment and *quid pro quo* sexual harassment.

■ The question before us, then, is whether the factual allegations Garcia presented to the trial court in her pleadings and summary judgment response rise to the level of harassment specified in *Vinson.* That is, did Garcia's summary judgment evidence show her workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment? Using the guidelines provided in *Harris,* our review of the summary judgment record for frequency of the offensive conduct, its severity, the presence of a physical threat or humiliation, and unreasonable interference with Garcia's work performance leads us to conclude Garcia did not meet her burden. While Garcia's summary judgment evidence reveals Schwab engaged in repeated incidents of ill-mannered or undesirable behavior, we find, as a matter of law, these instances did not amount to the quality or severity of misbehavior designed to subject Garcia to sufficiently hostile or abusive conditions to materially alter her condition of employment. Garcia presented no evidence to the trial court of intimidation or *discriminatory* ridicule or insult which unreasonably interfered with her job performance. Though certainly not dispositive, we note Garcia presented no evidence that she voiced any objections to Schwab or Garza regarding her discomfort with his conduct. The most serious incidents cited by Garcia do not evince a pattern of behavior likely to poison her work environment and, further, took place outside the workplace in a social setting. All of Garcia's evidence, taken together, fails to demonstrate her working conditions were so severely degraded and fraught with discriminatory hostility or abuse as to warrant invocation of the Human Rights Act protections.

We find the trial court did not err in granting appellee's motion for summary judgment. Judgment is AFFIRMED.