CITY OF SAN ANTONIO V. MICHAEL CANCEL







NO. 07-07-0285-CV
 
IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 28, 2008
______________________________

CITY OF SAN ANTONIO, APPELLANT

V.

MICHAEL CANCEL, APPELLEE
_________________________________

FROM THE 166TH DISTRICT COURT OF BEXAR COUNTY;

NO. 2005-CI-18074; HONORABLE LARRY NOLL, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
OPINION
          Appellant, City of San Antonio, appeals a judgment entered on a jury verdict finding
that appellee, Michael Cancel, was subjected to sexual harassment by the City’s Assistant
Aviation Department Director, Ryan Martinez, and awarding Cancel damages for mental
anguish and emotional pain and suffering in the amount of $90,000, pre- and post-judgment interest, attorney’s fees, and costs of court. We reverse and render judgment
that Cancel take nothing by his claims.
 
Background
          Michael Cancel began working for the City of San Antonio in 1998 or 1999. He was
transferred to work for the aviation department sometime around 2001. By 2005, Cancel
was performing custodial work in the customs department of the airport. However,
because additional help was often needed cleaning the mezzanine area of Terminal 1,
Cancel was frequently assigned to assist in this area of the airport.
          On July 5, 2005, Cancel, while working on the mezzanine level of Terminal 1, was
approached by Martinez. Martinez asked Cancel what was wrong. Cancel responded that
he was going through a divorce. Martinez explained to Cancel that he had been through
a similar situation and asked Cancel if he wanted to come into Martinez’s office to talk
about it. Cancel agreed. Upon entering the office and at Martinez’s request, Cancel
closed the office’s door. After some initial discussion of Cancel’s divorce, Martinez told
Cancel that he should do something crazy like taking off all of his clothes. This suggestion
made Cancel uncomfortable and he tried to steer the conversation back to his pending
divorce. However, Martinez persisted and repeatedly recommended that Cancel do
something crazy, like take off his clothes. Martinez then told Cancel that he knew people
in modeling, that he thought Cancel had model potential, and asked Cancel if he had ever
considered modeling. Martinez asked Cancel to lift up his shirt. Cancel obliged, but he
was wearing an undershirt and only lifted his outer shirt. Cancel described the
conversation as Martinez “swarming” him, however, Cancel acknowledged that Martinez
never got up from his chair. During this conversation, Cancel noticed that Martinez “kept
messing with his pants area.” Martinez asked Cancel if he had ever had or performed a
lap dance. After 20 to 30 minutes had elapsed, Cancel told Martinez that he needed to
leave. As Cancel stood to leave the office, Martinez offered Cancel his phone number in
case Cancel needed anything. Cancel refused Martinez’s phone number, left the office,
and immediately reported the incident to his supervisor. Cancel never encountered
Martinez again while employed by the City.
          Cancel’s supervisor asked him if he wanted to report the incident, but Cancel said
that he did not know. Cancel was concerned because Martinez was such a highly placed
official in the aviation department and Cancel did not want to lose his job. Cancel went
home early on July 5, 2005. Upon his return, he was sent to help out on the mezzanine
level of Terminal 1 on July 6th or 7th. Cancel refused to work in that area. As a result,
Cancel was transferred to another terminal where he felt isolated from his co-workers. 
Approximately one week after the meeting with Martinez, Cancel reported the incident to
airport police. The police prepared a report of the complaint and reported it to the
Municipal Integrity Office. 
          After receiving the police report of the encounter between Cancel and Martinez, the
Municipal Integrity Office began an investigation of the incident. During the course of this
investigation, it was discovered that, in 2004, nude photos of men had been discovered on
Martinez’s city-owned computer by Clifford Curtis during a routine review of computer
services. According to the information gathered by the Municipal Integrity Office’s
investigation, Curtis was upset and distraught by the pictures, but failed to report the
incident through the appropriate channels. No documented reprimand was issued as a
result of the discovery of these photos. Cancel was not aware of this incident until
discovery was conducted for the present case. 
          A local airport newspaper or internet news service reported the Martinez-Cancel
incident in its police blotter. The report indicated that an assistant director of aviation
sexually harassed a cleaning man.


 Many of Cancel’s co-workers made copies of the
article and told him that they knew what had happened to him. Co-workers would laugh
or point at Cancel when he was on the job and this made Cancel uncomfortable. Due to
the constant pressure of others being aware of his ordeal, Cancel developed an inability
to mentally focus on his job. Within three weeks to a month after the incident with
Martinez, Cancel quit his job with the City.
          Cancel was offered counseling by the City and he availed himself of one counseling
session. Cancel sought additional counsel through his church. Even after Cancel left the
employ of the City, he continued to experience periods of lost appetite, sleeplessness, and
crying out. Cancel also indicated that there were times when he would lose strength, did
not want to work, and wanted to collapse.
          Cancel filed suit alleging that he had been the victim of sexual harassment creating
a hostile work environment and seeking damages for mental anguish and emotional pain
and suffering from the City. At trial and after Cancel rested from presenting his case-in-chief, the City moved for directed verdict. The trial court overruled the motion and, at the
close of trial, the case was submitted to the jury. The jury returned a verdict finding that
Cancel had been subjected to sexual harassment and awarding Cancel $90,000 in mental
anguish and emotional pain and suffering damages. After overruling the City’s motions for
judgment not withstanding the verdict and to disregard jury findings, the trial court entered
judgment on the jury’s verdict. From this judgment, the City appeals.
          By its appeal, the City presents eight issues. By its first and second issues, the City
contends that the evidence that Cancel was subjected to sexual harassment is legally and
factually insufficient. By its third and fourth issues, the City contends that the evidence is
legally and factually insufficient to support a finding that Martinez was Cancel’s supervisor. 
By its fifth and sixth issues, the City contends that the evidence that Cancel suffered legally
compensable mental anguish damages is legally and factually insufficient. By its seventh
issue, the City contends that the trial court erred in submitting a jury instruction identifying
the standard for sexual harassment by a supervisor rather than the standard for a co-worker. By its eighth issue, the City contends that the trial court erred in denying its motion
for judgment not withstanding the verdict because Texas does not recognize a claim for
same-sex sexual harassment. We will address the City’s eighth issue first to determine
whether a same-sex sexual harassment claim is cognizable in Texas and then will return
to the City’s first issue. However, because our resolution of the City’s first issue is
dispositive of the appeal, we will not address the City’s other issues.
 
 
Texas Claim for Same-Sex Sexual Harassment
          By its eighth issue, the City contends that the trial court erred in denying its motion
for judgment not withstanding the verdict. On appeal, the City contends that the Texas
Supreme Court has not recognized a claim for same-sex sexual harassment and argues
that Texas jurisprudence should diverge from federal interpretation and not recognize a
claim of same-sex sexual harassment. In the alternative, if this Court recognizes a claim
for same-sex sexual harassment as cognizable under Texas law, the City contends that
such a claim should require proof of an additional element identified in Oncale v.
Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201
(1998).
          The Texas Commission on Human Rights Act (hereafter “TCHRA,” now codified in
chapter 21 of the Texas Labor Code) makes it unlawful for an employer to discriminate
against an employee with respect to compensation or the terms, conditions, or privileges
of employment because of race, color, disability, religion, sex, or national origin. Tex. Lab.
Code Ann. § 21.051 (Vernon 1996). Sexual harassment is a form of sex discrimination
that is prohibited by both the TCHRA and Title VII of the Civil Rights Act of 1964. Hoffman-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 445-46 (Tex. 2004). The TCHRA is
modeled after federal law to execute the purposes of Title VII. Dillard Dep’t Stores, Inc.
v. Gonzales, 72 S.W.3d 398, 406 (Tex.App.–El Paso 2002, pet. denied). The United
States Supreme Court has recognized claims of same-sex sexual harassment as
actionable under Title VII. See Oncale, 523 U.S. at 82.
          In Oncale, the Court explained that “Title VII’s prohibition of discrimination ‘because
of . . . sex’ protects men as well as women . . . .” Id. at 78 (citing Newport News
Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682, 103 S.Ct. 2622, 77 L.Ed.2d 89
(1983)). It further clarified that Title VII’s prohibition of discrimination “. . . must extend to
sexual harassment of any kind that meets the statutory requirements.” Id. at 80. However,
the Court cautioned that, “The critical issue . . . is whether members of one sex are
exposed to disadvantageous terms or conditions of employment to which members of the
other sex are not exposed.” Id. For the same reasons that the United States Supreme
Court recognized claims of same-sex sexual harassment as furthering the purposes of Title
VII, we conclude that the recognition of same-sex sexual harassment claims under Texas
law furthers the purposes of the TCHRA.
          The El Paso Court of Appeals, guided by the analysis in Oncale, concluded “that
same-sex sexual harassment is likewise actionable under TCHRA, and Dillard’s does not
contend otherwise.” Dillard Dep’t Stores, Inc., 72 S.W.3d at 407. In its brief, the City
seizes upon the last portion of the quoted passage and argues that the basis of the El
Paso Court’s holding was the absence of any argument to the contrary. However, the
Dillard’s opinion makes it clear that the El Paso Court’s conclusion was guided by the
reasoning of Oncale and simply notes that Dillard’s did not contend otherwise. As an issue
of statutory construction presents a question of law, Lamar Homes, Inc. v. Mid-Continent
Cas. Co., 242 S.W.3d 1, 19 (Tex. 2007), we fail to see how the absence of argument to
the contrary is of import to the El Paso Court’s holding. Thus, we agree with the Dillard’s
holding and hold that claims of same-sex sexual harassment are actionable under the
TCHRA.
          The City contends, in the alternative, that Oncale imposes an additional element on
a claim for same-sex sexual harassment. According to the City’s interpretation of Oncale,
a same-sex sexual harassment plaintiff must prove each element of a sexual harassment
claim and also establish that (1) the alleged harasser made explicit or implicit proposals
of sexual activity and the harasser is homosexual, (2) the harasser was motivated by
general hostility to the presence of members of the same sex in the workplace, or (3) the
alleged harasser treated members of both sexes differently. To support its contention, the
City cites the following paragraph from Oncale:
Courts and juries have found the inference of discrimination easy to draw in
most male-female sexual harassment situations, because the challenged
conduct typically involves explicit or implicit proposals of sexual activity; it is
reasonable to assume those proposals would not have been made to
someone of the same sex. The same chain of inference would be available
to a plaintiff alleging same-sex harassment, if there were credible evidence
that the harasser was homosexual. But harassing conduct need not be
motivated by sexual desire to support an inference of discrimination on the
basis of sex. A trier of fact might reasonably find such discrimination, for
example, if a female victim is harassed in such sex-specific and derogatory
terms by another woman as to make it clear that the harasser is motivated
by general hostility to the presence of women in the workplace. A same-sex
harassment plaintiff may also, of course, offer direct comparative evidence
about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he
or she must always prove that the conduct at issue was not merely tinged
with offensive sexual connotations, but actually constituted “discrimination
. . . because of . . . sex.” 
Oncale, 523 U.S. at 80-81 (emphasis added). One of the elements of a claim for sexual
harassment under the TCHRA is that the harassment was based on sex. Green v. Indus.
Specialty Contractors, Inc., 1 S.W.3d 126, 131 (Tex.App.–Houston [1st Dist.] 1999, no pet.). 
Thus, rather than identifying an additional element required for a claim of same-sex
harassment, we construe the quoted portion of Oncale as identifying examples of
“evidentiary route[s]” by which a plaintiff could prove this element of its sexual harassment
claim.
          We overrule the City’s eighth issue.
Legal Sufficiency of Sexual Harassment Evidence
          By its first issue, the City contends that the evidence is legally insufficient to support
the jury’s finding that Cancel was subjected to sexual harassment. To prove a claim of
hostile work environment sexual harassment, plaintiffs must show that: (1) they belong to
a protected group; (2) they were subjected to unwelcome sexual harassment; (3) the
harassment was based on sex; (4) the harassment complained of affected a term,
condition, or privilege of employment; and (5) the employer knew or should have known
of the harassment and failed to take remedial action.


 Id.; Garcia v. Schwab, 967 S.W.2d
883, 885 (Tex.App.–Corpus Christi 1998, no pet.); Soto v. El Paso Natural Gas Co., 942
S.W.2d 671, 678 (Tex.App.–El Paso 1997, writ denied). 
          Cancel had the burden of proof on the issue of whether Martinez’s harassment
created a hostile work environment. In reviewing a legal sufficiency challenge to a jury
verdict, we must consider only the evidence and inferences that tend to support the finding,
disregarding any evidence or inference to the contrary. Sw. Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). We may sustain a legal insufficiency issue only
when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or
(4) the evidence conclusively establishes the opposite of the vital fact. City of Houston,
166 S.W.3d at 488 (citing Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997)). If there is any evidence of probative force to support the finding, we must overrule
the legal insufficiency challenge. Id.



          Cancel made no allegation that he was subjected to quid pro quo harassment,
rather, Cancel contended that Martinez’s sexual harassment created a hostile or abusive
work environment. To have an actionable claim for hostile work environment sexual
harassment, a plaintiff must show that the workplace was permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a hostile
or abusive working environment. Garcia, 967 S.W.2d at 885 (citing Meritor Sav. Bank,
FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The work
environment must be both objectively and subjectively made hostile or abusive by the
discriminatory conduct. City of Houston, 166 S.W.3d at 489; Garcia, 967 S.W.2d at 885
(citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). 
In assessing the objective hostility or abusiveness of harassment, we must view the
discriminatory conduct from the perspective of a reasonable person in the plaintiff’s
position in the same circumstances. Garcia, 967 S.W.2d at 886. In determining whether
a work environment is sufficiently hostile or abusive, we must review the totality of the
circumstances, including the frequency of the discriminatory conduct; its severity; whether
the conduct was physically threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interfered with the employee’s work performance. City of
Houston, 166 S.W.3d at 489; Green, 1 S.W.3d at 131-32 (citing Harris, 510 U.S. at 23). 
A hostile work environment claim is designed to address conduct that is so severe or
pervasive that it destroys an employee’s opportunity to succeed in the workplace. City of
Houston, 166 S.W.3d at 490. The critical inquiry is the environment: evidence of general
work atmosphere as well as specific instances of hostility or abuse are important. Wal-Mart Stores, Inc. v. Itz, 21 S.W.3d 456, 473 (Tex.App.–Austin 2000, pet. denied); Soto, 942
S.W.2d at 678. Single incidents should not be viewed in isolation, as it is the cumulative
effect of offensive behavior that creates the work environment. Wal-Mart Stores, Inc., 21
S.W.3d at 473. “All of the sexual hostile environment cases decided by the Supreme Court
have involved patterns or allegations of extensive, longlasting, unredressed, and
uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.” 
Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (citing Faragher, 524
U.S. 775; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d
633 (1998); Oncale, 523 U.S. 75; Harris, 510 U.S. 17; Meritor Sav. Bank, 477 U.S. 57).



          In the present case, considering only the evidence and inferences that tend to
support the jury’s hostile environment sexual harassment finding and disregarding any
evidence to the contrary, Sw. Key Program, 81 S.W.3d at 274, leaves us with the following
facts. Martinez repeatedly suggested that Cancel take off his clothes as therapy for his
depressed state. Martinez told Cancel that he had model potential and Martinez implied
that he could help Cancel get into modeling because of the people that he knows. 
Martinez asked Cancel to lift his shirt while, at the same time, Martinez “kept messing with
his pants area.” Martinez asked Cancel if he had ever received or given a lap dance. 
Finally, when Cancel said that he needed to get back to work, Martinez offered Cancel his
phone number. All of these events occurred during this single meeting that lasted
approximately 20 to 30 minutes.
          Using the guidelines provided by Harris, our review of the evidence for the frequency
of the offensive conduct, its severity, the presence of physical threat or humilation, and
unreasonable interference with Cancel’s ability to work leads us to conclude, as a matter
of law, that Cancel was not subjected to such frequent or severe sexual harassment that
would create a hostile or abusive work environment to a reasonable person in Cancel’s
position. Martinez’s repeated suggestion that Cancel take off his clothes, when taken in
context, was boorish and offensive, but not so severe as to alter a term, condition, or
privilege of employment. Martinez’s statement that Cancel had model potential, in another
context, could be considered complementary, however, in the context in which this
offhanded comment was made, it was inappropriate, but not severe enough to constitute
harassment. The more sexually charged discussion of lap dances and the fact that
Martinez “kept messing with his pants area” was ill-mannered and certainly not appropriate
for the workplace, but was not so severe as to alter Cancel’s work environment. Finally,
the only evidence of the reason that Martinez offered his phone number to Cancel was in
case Cancel should need anything and not as a sexual advance. Even when the totality
of Martinez’s conduct is considered cumulatively, Wal-Mart Stores, Inc., 21 S.W.3d at 470,
the conduct was not so severe or pervasive as to affect the terms, conditions, and
privileges of Cancel’s employment. We conclude that, as a matter of law, the inappropriate
conduct of Martinez in a single 20 to 30 minute meeting in which Martinez did not
proposition, touch, threaten, or publically humiliate Cancel was not so severe or pervasive
that it would have destroyed a reasonable person’s opportunity to succeed in the
workplace. Harris, 510 U.S. at 22; City of Houston, 166 S.W.3d at 489; Garcia, 967
S.W.2d at 885.
          However, Cancel contends that we must consider the general work atmosphere and
this requires consideration of the cumulative effect of all offensive behavior that creates the
work environment, including the discovery of pornographic photos on Martinez’s computer
in 2004. The City contends that Cancel was unaware of this incident until discovery in the
present case and, therefore, it was not relevant to Cancel’s claim. However, single
incidents should not be viewed in isolation because it is the cumulative effect of all
offensive behavior that creates the work environment. Wal-Mart Stores, Inc., 21 S.W.3d
at 470. However, even considering this incident, the evidence establishes only that there
were two isolated instances of sexually offensive behavior over a one and a half to two
year period. Further, the evidence regarding the pornographic pictures is that only one
employee of the airport was aware of this incident until after discovery was conducted in
Cancel’s present action. We conclude that, as a matter of law, the total evidence of
sexually offensive behavior was not so severe or pervasive as to create a hostile or
abusive work environment from the perspective of a reasonable person in Cancel’s position
and certainly did not establish that “the workplace is permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a
discriminatorily hostile or abusive working environment.” Garcia, 967 S.W.2d at 885.
          Because our review of the evidence indicates that Cancel failed to present at least
a scintilla of evidence to support his claim of hostile work environment sexual harassment,
we affirm the City’s first issue and reverse the trial court’s judgment.
Conclusion
          We reverse the judgment of the trial court and render judgment that Cancel take
nothing by his claims.
                                                                           Mackey K. Hancock

                                                                                      Justice