NO. 07-07-0285-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 28, 2008
_____

CITY OF SAN ANTONIO, APPELLANT

V.

MICHAEL CANCEL, APPELLEE
_____

FROM THE 166TH DISTRICT COURT OF BEXAR COUNTY;

NO. 2005-CI-18074; HONORABLE LARRY NOLL, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, City of San Antonio, appeals a judgment entered on a jury verdict finding that appellee, Michael Cancel, was subjected to sexual harassment by the City's Assistant Aviation Department Director, Ryan Martinez, and awarding Cancel damages for mental anguish and emotional pain and suffering in the amount of $90,000, pre- and post-judgment interest, attorney's fees, and costs of court. We reverse and render judgment that Cancel take nothing by his claims.

Background

Michael Cancel began working for the City of San Antonio in 1998 or 1999. He was transferred to work for the aviation department sometime around 2001. By 2005, Cancel was performing custodial work in the customs department of the airport. However, because additional help was often needed cleaning the mezzanine area of Terminal 1, Cancel was frequently assigned to assist in this area of the airport.

On July 5, 2005, Cancel, while working on the mezzanine level of Terminal 1, was approached by Martinez. Martinez asked Cancel what was wrong. Cancel responded that he was going through a divorce. Martinez explained to Cancel that he had been through a similar situation and asked Cancel if he wanted to come into Martinez's office to talk about it. Cancel agreed. Upon entering the office and at Martinez's request, Cancel closed the office's door. After some initial discussion of Cancel's divorce, Martinez told Cancel that he should do something crazy like taking off all of his clothes. This suggestion made Cancel uncomfortable and he tried to steer the conversation back to his pending divorce. However, Martinez persisted and repeatedly recommended that Cancel do something crazy, like take off his clothes. Martinez then told Cancel that he knew people in modeling, that he thought Cancel had model potential, and asked Cancel if he had ever considered modeling. Martinez asked Cancel to lift up his shirt. Cancel obliged, but he was wearing an undershirt and only lifted his outer shirt. Cancel described the conversation as Martinez "swarming" him, however, Cancel acknowledged that Martinez never got up from his chair. During this conversation, Cancel noticed that Martinez "kept messing with his pants area." Martinez asked Cancel if he had ever had or performed a

2

lap dance.  After 20 to 30 minutes had elapsed, Cancel told Martinez that he needed to leave.  As Cancel stood to leave the office, Martinez offered Cancel his phone number in case Cancel needed anything.  Cancel refused Martinez's phone number, left the office, and immediately reported the incident to his supervisor.  Cancel never encountered Martinez again while employed by the City.

Cancel's supervisor asked him if he wanted to report the incident, but Cancel said that he did not know.  Cancel was concerned because Martinez was such a highly placed official in the aviation department and Cancel did not want to lose his job.  Cancel went home early on July 5, 2005.  Upon his return, he was sent to help out on the mezzanine level of Terminal 1 on July 6th or 7th.  Cancel refused to work in that area.  As a result, Cancel was transferred to another terminal where he felt isolated from his co-workers.  Approximately one week after the meeting with Martinez, Cancel reported the incident to airport police.  The police prepared a report of the complaint and reported it to the Municipal Integrity Office.

After receiving the police report of the encounter between Cancel and Martinez, the Municipal Integrity Office began an investigation of the incident.  During the course of this investigation, it was discovered that, in 2004, nude photos of men had been discovered on Martinez's city-owned computer by Clifford Curtis during a routine review of computer services.  According to the information gathered by the Municipal Integrity Office's investigation, Curtis was upset and distraught by the pictures, but failed to report the incident through the appropriate channels.  No documented reprimand was issued as a

result of the discovery of these photos. Cancel was not aware of this incident until discovery was conducted for the present case.

A local airport newspaper or internet news service reported the Martinez-Cancel incident in its police blotter. The report indicated that an assistant director of aviation sexually harassed a cleaning man.[1] Many of Cancel's co-workers made copies of the article and told him that they knew what had happened to him. Co-workers would laugh or point at Cancel when he was on the job and this made Cancel uncomfortable. Due to the constant pressure of others being aware of his ordeal, Cancel developed an inability to mentally focus on his job. Within three weeks to a month after the incident with Martinez, Cancel quit his job with the City.

Cancel was offered counseling by the City and he availed himself of one counseling session. Cancel sought additional counsel through his church. Even after Cancel left the employ of the City, he continued to experience periods of lost appetite, sleeplessness, and crying out. Cancel also indicated that there were times when he would lose strength, did not want to work, and wanted to collapse.

Cancel filed suit alleging that he had been the victim of sexual harassment creating a hostile work environment and seeking damages for mental anguish and emotional pain and suffering from the City. At trial and after Cancel rested from presenting his case-in-chief, the City moved for directed verdict. The trial court overruled the motion and, at the

---

[1] Nothing in the record identifies how Cancel's co-workers were able to identify him as the victim of the reported sexual harassment. The testimony regarding the article only indicated that it identified the victim as a "cleaning man."

4

close of trial, the case was submitted to the jury. The jury returned a verdict finding that Cancel had been subjected to sexual harassment and awarding Cancel $90,000 in mental anguish and emotional pain and suffering damages. After overruling the City's motions for judgment not withstanding the verdict and to disregard jury findings, the trial court entered judgment on the jury's verdict. From this judgment, the City appeals.

By its appeal, the City presents eight issues. By its first and second issues, the City contends that the evidence that Cancel was subjected to sexual harassment is legally and factually insufficient. By its third and fourth issues, the City contends that the evidence is legally and factually insufficient to support a finding that Martinez was Cancel's supervisor. By its fifth and sixth issues, the City contends that the evidence that Cancel suffered legally compensable mental anguish damages is legally and factually insufficient. By its seventh issue, the City contends that the trial court erred in submitting a jury instruction identifying the standard for sexual harassment by a supervisor rather than the standard for a co-worker. By its eighth issue, the City contends that the trial court erred in denying its motion for judgment not withstanding the verdict because Texas does not recognize a claim for same-sex sexual harassment. We will address the City's eighth issue first to determine whether a same-sex sexual harassment claim is cognizable in Texas and then will return to the City's first issue. However, because our resolution of the City's first issue is dispositive of the appeal, we will not address the City's other issues.

Texas Claim for Same-Sex Sexual Harassment

By its eighth issue, the City contends that the trial court erred in denying its motion for judgment not withstanding the verdict. On appeal, the City contends that the Texas Supreme Court has not recognized a claim for same-sex sexual harassment and argues that Texas jurisprudence should diverge from federal interpretation and not recognize a claim of same-sex sexual harassment. In the alternative, if this Court recognizes a claim for same-sex sexual harassment as cognizable under Texas law, the City contends that such a claim should require proof of an additional element identified in Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

The Texas Commission on Human Rights Act (hereafter "TCHRA," now codified in chapter 21 of the Texas Labor Code) makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin. TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). Sexual harassment is a form of sex discrimination that is prohibited by both the TCHRA and Title VII of the Civil Rights Act of 1964. Hoffman-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 445-46 (Tex. 2004). The TCHRA is modeled after federal law to execute the purposes of Title VII. Dillard Dep't Stores, Inc. v. Gonzales, 72 S.W.3d 398, 406 (Tex.App.–El Paso 2002, pet. denied). The United States Supreme Court has recognized claims of same-sex sexual harassment as actionable under Title VII. See Oncale, 523 U.S. at 82.

6

In Oncale, the Court explained that "Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women . . . ." Id. at 78 (citing Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983)). It further clarified that Title VII's prohibition of discrimination ". . . must extend to sexual harassment of any kind that meets the statutory requirements." Id. at 80. However, the Court cautioned that, "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. For the same reasons that the United States Supreme Court recognized claims of same-sex sexual harassment as furthering the purposes of Title VII, we conclude that the recognition of same-sex sexual harassment claims under Texas law furthers the purposes of the TCHRA.

The El Paso Court of Appeals, guided by the analysis in Oncale, concluded "that same-sex sexual harassment is likewise actionable under TCHRA, and Dillard's does not contend otherwise." Dillard Dep't Stores, Inc., 72 S.W.3d at 407. In its brief, the City seizes upon the last portion of the quoted passage and argues that the basis of the El Paso Court's holding was the absence of any argument to the contrary. However, the Dillard's opinion makes it clear that the El Paso Court's conclusion was guided by the reasoning of Oncale and simply notes that Dillard's did not contend otherwise. As an issue of statutory construction presents a question of law, Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 19 (Tex. 2007), we fail to see how the absence of argument to the contrary is of import to the El Paso Court's holding. Thus, we agree with the Dillard's

7

holding and hold that claims of same-sex sexual harassment are actionable under the TCHRA.

The City contends, in the alternative, that Oncale imposes an additional element on a claim for same-sex sexual harassment. According to the City's interpretation of Oncale, a same-sex sexual harassment plaintiff must prove each element of a sexual harassment claim and also establish that (1) the alleged harasser made explicit or implicit proposals of sexual activity and the harasser is homosexual, (2) the harasser was motivated by general hostility to the presence of members of the same sex in the workplace, or (3) the alleged harasser treated members of both sexes differently. To support its contention, the City cites the following paragraph from Oncale:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimination . . . because of . . . sex."

Oncale, 523 U.S. at 80-81 (emphasis added). One of the elements of a claim for sexual harassment under the TCHRA is that the harassment was based on sex. Green v. Indus.

8

Specialty Contractors, Inc., 1 S.W.3d 126, 131 (Tex.App.–Houston [1ˢᵗ Dist.] 1999, no pet.). Thus, rather than identifying an additional element required for a claim of same-sex harassment, we construe the quoted portion of Oncale as identifying examples of "evidentiary route[s]" by which a plaintiff could prove this element of its sexual harassment claim.

We overrule the City's eighth issue.

Legal Sufficiency of Sexual Harassment Evidence

By its first issue, the City contends that the evidence is legally insufficient to support the jury's finding that Cancel was subjected to sexual harassment. To prove a claim of hostile work environment sexual harassment, plaintiffs must show that: (1) they belong to a protected group; (2) they were subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.[2] Id.; Garcia v. Schwab, 967 S.W.2d 883, 885 (Tex.App.–Corpus Christi 1998, no pet.); Soto v. El Paso Natural Gas Co., 942 S.W.2d 671, 678 (Tex.App.–El Paso 1997, writ denied).

---

[2] However, if the alleged harassment was perpetrated by a supervisor with immediate or successively higher authority, a plaintiff need only satisfy the first four elements. Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); City of Houston v. Fletcher, 166 S.W.3d 479, 488 (Tex.App.–Eastland 2005, pet. denied).

Cancel had the burden of proof on the issue of whether Martinez's harassment created a hostile work environment. In reviewing a legal sufficiency challenge to a jury verdict, we must consider only the evidence and inferences that tend to support the finding, disregarding any evidence or inference to the contrary. Sw. Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). We may sustain a legal insufficiency issue only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. City of Houston, 166 S.W.3d at 488 (citing Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). If there is any evidence of probative force to support the finding, we must overrule the legal insufficiency challenge. Id.[3]

Cancel made no allegation that he was subjected to *quid pro quo* harassment, rather, Cancel contended that Martinez's sexual harassment created a hostile or abusive work environment. To have an actionable claim for hostile work environment sexual harassment, a plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a hostile

---

[3] Cancel attempts to distinguish many of the cases cited by the City as appeals from the grant of summary judgment on behalf of employers rather than jury verdicts in favor of the victimized employee. However, the standard of review for a legal sufficiency challenge to a jury verdict is the same standard applied in reviewing a grant of a no-evidence summary judgment. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). As such, we are guided by prior determinations of what quantum of evidence does and does not constitute more than a mere scintilla of evidence of sexual harassment, even if those determinations were made in response to a pre-trial summary judgment motion.

10

or abusive working environment. Garcia, 967 S.W.2d at 885 (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The work environment must be both objectively and subjectively made hostile or abusive by the discriminatory conduct. City of Houston, 166 S.W.3d at 489; Garcia, 967 S.W.2d at 885 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In assessing the objective hostility or abusiveness of harassment, we must view the discriminatory conduct from the perspective of a reasonable person in the plaintiff's position in the same circumstances. Garcia, 967 S.W.2d at 886. In determining whether a work environment is sufficiently hostile or abusive, we must review the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. City of Houston, 166 S.W.3d at 489; Green, 1 S.W.3d at 131-32 (citing Harris, 510 U.S. at 23). A hostile work environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. City of Houston, 166 S.W.3d at 490. The critical inquiry is the environment: evidence of general work atmosphere as well as specific instances of hostility or abuse are important. Wal-Mart Stores, Inc. v. Itz, 21 S.W.3d 456, 473 (Tex.App.–Austin 2000, pet. denied); Soto, 942 S.W.2d at 678. Single incidents should not be viewed in isolation, as it is the cumulative effect of offensive behavior that creates the work environment. Wal-Mart Stores, Inc., 21 S.W.3d at 473. "All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment."

11

Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (citing Faragher, 524 U.S. 775; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); Oncale, 523 U.S. 75; Harris, 510 U.S. 17; Meritor Sav. Bank, 477 U.S. 57).[4]

In the present case, considering only the evidence and inferences that tend to support the jury's hostile environment sexual harassment finding and disregarding any evidence to the contrary, Sw. Key Program, 81 S.W.3d at 274, leaves us with the following facts. Martinez repeatedly suggested that Cancel take off his clothes as therapy for his depressed state. Martinez told Cancel that he had model potential and Martinez implied that he could help Cancel get into modeling because of the people that he knows. Martinez asked Cancel to lift his shirt while, at the same time, Martinez "kept messing with his pants area." Martinez asked Cancel if he had ever received or given a lap dance. Finally, when Cancel said that he needed to get back to work, Martinez offered Cancel his phone number. All of these events occurred during this single meeting that lasted approximately 20 to 30 minutes.

Using the guidelines provided by Harris, our review of the evidence for the frequency of the offensive conduct, its severity, the presence of physical threat or humilation, and unreasonable interference with Cancel's ability to work leads us to conclude, as a matter of law, that Cancel was not subjected to such frequent or severe sexual harassment that

[4] Since the time that Indest was decided, the Supreme Court has reviewed at least one claim of hostile work environment sexual harassment based on a single incident. In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), the Court held that a single sexually offensive statement followed by chuckling was, at worst, an "isolated incident" that cannot remotely be considered "extremely serious." Id. at 271.

would create a hostile or abusive work environment to a reasonable person in Cancel's position. Martinez's repeated suggestion that Cancel take off his clothes, when taken in context, was boorish and offensive, but not so severe as to alter a term, condition, or privilege of employment. Martinez's statement that Cancel had model potential, in another context, could be considered complementary, however, in the context in which this offhanded comment was made, it was inappropriate, but not severe enough to constitute harassment. The more sexually charged discussion of lap dances and the fact that Martinez "kept messing with his pants area" was ill-mannered and certainly not appropriate for the workplace, but was not so severe as to alter Cancel's work environment. Finally, the only evidence of the reason that Martinez offered his phone number to Cancel was in case Cancel should need anything and not as a sexual advance. Even when the totality of Martinez's conduct is considered cumulatively, Wal-Mart Stores, Inc., 21 S.W.3d at 470, the conduct was not so severe or pervasive as to affect the terms, conditions, and privileges of Cancel's employment. We conclude that, as a matter of law, the inappropriate conduct of Martinez in a single 20 to 30 minute meeting in which Martinez did not proposition, touch, threaten, or publically humiliate Cancel was not so severe or pervasive that it would have destroyed a reasonable person's opportunity to succeed in the workplace. Harris, 510 U.S. at 22; City of Houston, 166 S.W.3d at 489; Garcia, 967 S.W.2d at 885.

However, Cancel contends that we must consider the general work atmosphere and this requires consideration of the cumulative effect of all offensive behavior that creates the work environment, including the discovery of pornographic photos on Martinez's computer

13

in 2004. The City contends that Cancel was unaware of this incident until discovery in the present case and, therefore, it was not relevant to Cancel's claim. However, single incidents should not be viewed in isolation because it is the cumulative effect of all offensive behavior that creates the work environment. Wal-Mart Stores, Inc., 21 S.W.3d at 470. However, even considering this incident, the evidence establishes only that there were two isolated instances of sexually offensive behavior over a one and a half to two year period. Further, the evidence regarding the pornographic pictures is that only one employee of the airport was aware of this incident until after discovery was conducted in Cancel's present action. We conclude that, as a matter of law, the total evidence of sexually offensive behavior was not so severe or pervasive as to create a hostile or abusive work environment from the perspective of a reasonable person in Cancel's position and certainly did not establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment." Garcia, 967 S.W.2d at 885.

Because our review of the evidence indicates that Cancel failed to present at least a scintilla of evidence to support his claim of hostile work environment sexual harassment, we affirm the City's first issue and reverse the trial court's judgment.

Conclusion

We reverse the judgment of the trial court and render judgment that Cancel take nothing by his claims.

Mackey K. Hancock
Justice

14