In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00251-CV
_____

CITY OF COLDSPRING AND GREG VORE, Appellants

V.

SUZANN BOUDREAUX, Appellee

On Appeal from the 258th District Court
San Jacinto County, Texas
Trial Cause No. CV15,835

**MEMORANDUM OPINION**

Suzann Boudreaux sued her employer, the City of Coldspring ("the City"), alleging that the City, by and through the actions of its Alderperson, Greg Vore, engaged in sex discrimination and workplace harassment in violation of the Texas Commission of Human Rights Act ("TCHRA"). Boudreaux sued Vore, individually, for defamation, defamation *per se*, slander, and intentional infliction of emotional distress. The City brings this interlocutory appeal from the trial court's order denying

its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Gore filed an interlocutory appeal, challenging the denial of his motion to dismiss Boudreaux's suit under the Texas Citizens Participation Act ("TCPA"). *See id.* § 51.014(a)(12). We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Boudreaux's claims for lack of subject matter jurisdiction. We reverse the trial court's order denying Vore's motion to dismiss, order Boudreaux's suit dismissed, and remand the case to the trial court to assess damages and costs that are allowed under the TCPA.[1]

## Background

Boudreaux, the City's secretary, sued the City and Alderman Vore, alleging that the actions of the City and Vore, jointly and individually, constitute workplace harassment and sex discrimination under the TCHRA. Boudreaux further alleged that Vore's actions, public statements, and outbursts constitute defamation, slander, defamation *per se*, and intentional infliction of emotional distress because they were extreme, outrageous, and false; made to third persons; resulted in reputation harm

---

[1]The Legislature amended the TCPA, effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687. The amendment only applies to suits filed after its effective date. *See id.* Therefore, because Boudreaux's original petition was filed before September 1, 2019, the version of the TCPA that was in effect immediately prior to the 2019 amendment applies to this appeal. *See id.*

2

and mental distress and anxiety that was and is severe; and were made with malice and/or negligence.

Boudreaux alleged that during a city council meeting on November 5, 2018, Vore stood up during open session and slapped on the table in a threatening manner and shouted that she was a liar. According to Boudreaux, the statement was untrue and constituted harassment and intimidation. Boudreaux alleged that she is the only female employee of the City, she and Mayor Pat Eversole are the only females in official attendance at the city council meetings, and all of the alderpersons were male. Boudreaux alleged that some of the alderpersons had created a working environment that was harassing, demeaning, and discriminatory against women and other minorities. In support of her claim, Boudreaux listed the following examples of behavior of certain aldermen that Boudreaux alleges created a hostile workplace of intimidation, harassment, and discrimination:

- During the November 5 city council meeting, Vore yelled at Eversole, stating "I don't like you and I can't stand to look at you." Immediately following the meeting, Alderman Charles Altman told Eversole that she should fix her hair and nails so that it would not be so difficult for Vore to look at her.

- Aldermen openly discussed and questioned why a female citizen of African American heritage would want to serve on city council.

3

- On numerous occasions, Altman entered city council announcing that "his balls are on the table," and Vore stated that "he was looking for a set of pink balls for the Mayor so she could have some[.]"

- While discussing a ticket that a Texas Department of Public Safety Trooper had issued to a citizen, Vore used a racial epithet. Boudreaux and Eversole were present when Vore made the statement, and Boudreaux alleged that Vore intended his statement not only as a racial slur, but also as a bullying and demeaning statement because Vore knew that Eversole was in a relationship with an African American.

- Vore frequently patted his hips and warned, in an intimidating fashion, that he had a firearm.

- Vore openly commented about the difficulties of a female citizen who was riding a bike, stating that she was so "fat you couldn't see the bike seat and she was barely moving."

Boudreaux alleged that the City and its officials were aware that she was subject to a hostile work environment, and Boudreaux sought damages, claiming the aldermen's behavior had resulted in her having anxiety, missing work, and seeking medical treatment. Boudreaux further alleged that Vore's intentional act of calling her a liar, Vore's statements in his pleadings, and statements made by Vore's

4

daughter and his daughter's boyfriend on social media have caused her serious stress, headaches, and sleepless nights for which she sought medical treatment.

The City filed a plea to the jurisdiction asserting that Boudreaux had failed to allege facts that, if proven true, would overcome the City's immunity from suit. The City argued that it is not vicariously liable under the allegations of Boudreaux's petition, because Vore, an elected official, is neither Boudreaux's supervisor nor an agent of the City. According to the City, because Boudreaux failed to allege a prima facie violation under the TCHRA, there is no waiver of sovereign immunity, and the trial court should have dismissed the suit for lack of subject matter jurisdiction. The City argued that except for the incident in which Vore called Boudreaux a liar, none of the alleged conduct pertains to situations in which Boudreaux was subjected to unwelcome harassment. The City further argued that because none of Boudreaux's allegations suggest that any of the conduct she characterizes as harassment was based upon her being a female, such alleged comments are immaterial to Boudreaux's sex discrimination claim. According to the City, there is no allegation to support any plausible inference that Vore called Boudreaux a liar because she is female, nor can one accusation support her claim for a hostile workplace.

Boudreaux filed a response to the City's plea to the jurisdiction, arguing that her pleadings establish that she was subject to a barrage of misogynistic and racist

5

commentary by the City that was severe, and City officials failed to act despite being aware of the wrongful conduct. According to Boudreaux, the TCHRA does not shield the City from liability for such egregious conduct. Boudreaux argued that the fact that some of the wrongful conduct was not directed at her is not determinative, because the wrongful conduct only needs to unreasonably interfere with her work performance. Boudreaux further argued that the court should not reject her gender harassment claim just because it is not overtly sexual in nature or because she has included instances of harassing conduct that was based on race.

Vore filed a motion to dismiss pursuant to the TCPA and argued that Boudreaux had filed a frivolous lawsuit to silence him from notifying the city council of a potential misrepresentation that Boudreaux had made to secure a concrete and metal removal contract from the City. According to Vore, in deciding to approve the City's award of the contract to Boudreaux's husband, Vore relied on Boudreaux's oral representation that her husband's quote included the removal of concrete. In his motion, Vore explained that it was during the November 5 council meeting when he first learned that there was a document purporting to allow Boudreaux's husband to refuse to remove any concrete more than three inches thick. Vore further explained that when he confronted Boudreaux during the council

6

meeting about her misrepresentation, Boudreaux denied making the statement, and at that point, Vore stated that Boudreaux lied to him.

Vore argued that Boudreaux's defamation claim is subject to dismissal because it is related to Vore's constitutional right to free speech. According to Vore, his statement that Boudreaux lied is unquestionably a matter of public concern because it was based on, related to, or in response to the procurement of a bid for the City's public services. Vore maintained that because his statement was made in response to a matter of public concern, the TCPA applied and the burden shifted to Boudreaux to prove her prima facie cases of defamation and defamation *per se*, which she failed to do. Vore also argued that he has official immunity for any statements made in association with his capacity as a city council member and that his statements are entitled to absolute privilege protections, including any statements he made in his pleadings. According to Vore, the trial court should also dismiss Boudreaux's claim for intentional infliction of emotional distress, because she failed to show that he made any non-privileged statements that were extreme and outrageous. Vore requested that the trial court dismiss Boudreaux's frivolous claims and award him attorney's fees, costs, and sanctions.

Boudreaux filed a response to Vore's motion to dismiss and a motion for discovery in support of her response, and she argued that she had established prima

7

facie claims against Vore, who she says does not have official or absolute immunity. Boudreaux argued that Vore's pattern of extreme and outrageous public outbursts has caused her extreme distress and damaged her reputation as a civil servant. Boudreaux maintained that Vore's allegation that she was a liar is false and that his motion to dismiss is meritless because his accusation does not relate to a matter of public concern. According to Boudreaux, the gist of Vore's statement was to falsely accuse her of a crime, and Boudreaux argued that an ordinary person who was aware of the circumstances would be left with the impression that Vore was accusing Boudreaux of wrongfully conspiring with her husband to procure a City contract by deception and deceit. Boudreaux also disagreed with Vore's allegation that he was a public official for purposes of her defamation claim, and contends that she is only required to prove that Vore negligently made the statement. Boudreaux requested that the trial court deny Vore's motion and award her court costs and attorney's fees. Boudreaux also requested permission to take depositions and seek production of the minutes from the City's closed executive session.

The trial court granted Boudreaux limited discovery allowing her to take depositions regarding Vore's motion to dismiss. During Boudreaux's deposition, she testified that when Vore called her a liar during the city council meeting, she "didn't have a clue why he was calling [her] a liar." Boudreaux testified that during the city

council meeting when they awarded her husband the contract, she thought that she had told Vore that her husband was going to include the removal of the concrete as a courtesy to help the City. Boudreaux testified that she did not specifically tell Vore that her husband had only agreed to remove concrete that was up to three inches. When asked if she could understand why Vore might have misinterpreted Boudreaux's statement that her husband was "throwing in" the removal of the concrete, Boudreaux testified, "[i]nterpretation I guess, yeah." Boudreaux explained that she and Eversole had a copy of her husband's written quote, but Boudreaux did not know if Vore or any of the other council members saw the quote. Boudreaux testified that Vore never called her a thief to her face, nor did he tell her during a council meeting that he thought she was engaging in nepotism or fraud. Boudreaux testified that she agreed that it was the job of the city councilmen to make sure the right person was hired to get the job done and to ensure that the person was not being overpaid for the job that was expected to be done.

Boudreaux explained that since filing her lawsuit, her job duties have changed. According to Boudreaux, most of her instructions concerning her job duties come from Eversole, and she needs Eversole and another council member to sign checks. Boudreaux testified that since Vore called her a liar, she takes anxiety medication, has trouble sleeping, and has experienced rashes and a nervous stomach.

9

Boudreaux's husband, Richard, testified that since the incident with Vore, Boudreaux is a different person and she "hardly know[s] her name anymore." Richard testified that Boudreaux felt physically threatened because Vore jumped up and slapped the table when he called her a liar. According to Richard, it was not what Vore said that bothered Boudreaux so much, but the way Vore said it. Richard testified that in addition to working as the City's secretary, Boudreaux performs administrative duties for his company, RB Enterprise, which performed the work at the sewer plant. Richard testified that he did not give RB Enterprise's quote to the city council, and Richard explained that he gave the quote to Boudreaux, and she gave it to Mike Brown.

During his deposition, Vore testified that on November 5, he stated that Boudreaux had lied to him, and Vore believed that Boudreaux lied to help her husband secure a city contract. Vore testified that when he called Boudreaux a liar, he stood up and slapped the table to get everyone's attention because there were two conversations going on. Vore explained that he first realized that Boudreaux had made misrepresentations when the job was not done the way it was supposed to have been. According to Vore, he asked Boudreaux twice if the concrete was included in the job, and the second time, Boudreaux said yes. Vore testified that during the April 1 city council meeting, he called Boudreaux a liar because she had lied. Vore

10

testified that he did not know anything about fraud, nepotism, or anything else, and that Boudreaux lied to him and "[t]hat's all it is to it." Vore testified that he had not assumed that Boudreaux was guilty of anything.

Vore also explained that when he told Eversole that he could not stand to look at her, Eversole was making faces at him. Vore further testified that all five of the city councilmen were Boudreaux's supervisors. Vore explained that Boudreaux lied to him, and he brought it to the attention of the other council members. Vore testified that after the incident occurred, the council unanimously agreed to give Boudreaux a raise because she had done an excellent job as the city secretary. Vore explained that Boudreaux had not indicated that she intended to leave her job.

The trial court conducted a hearing on the City's plea to the jurisdiction and Vore's motion to dismiss and heard the arguments of counsel. The trial court denied the City's plea to the jurisdiction. The trial court also denied Vore's motion to dismiss and ordered that Boudreaux was entitled to recover attorney's fees and court costs for having to respond to Vore's frivolous motion. The trial court issued findings of fact and conclusions of law on the City's plea and Vore's motion to dismiss, and the City and Vore objected to the trial court issuing findings of fact and conclusions of law because there was no bench trial. The City and Vore filed a joint notice of appeal.

11

The City's Plea to the Jurisdiction

On appeal, the City argues that the trial court erred in denying its plea to the jurisdiction because Boudreaux failed to plead a prima facie gender-based hostile work environment claim under section 21.051 of the Labor Code. *See* Tex. Lab. Code Ann. § 21.051. The City argued that it was immune from suit under the TCHRA because Boudreaux failed to plausibly plead or raise a fact issue on any of the essential elements of her claim. Boudreaux argued that she has plausibly pleaded and presented evidence showing that for years while working for the City, she was the subject of pervasive discrimination because of her sex.

Sovereign immunity protects the state from lawsuits from money damages and deprives a trial court of subject matter jurisdiction for lawsuits in which the state or its governmental units have been sued unless the state consents to suit. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Governmental immunity operates like sovereign immunity to afford similar protections to subdivisions of the state, including cities. *Id.* A city may raise its immunity from suit in a plea to the jurisdiction to defeat a cause of action for which the state has not waived sovereign immunity. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). We review a trial court's ruling on a plea that questions

the trial court's jurisdiction *de novo*. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. When evidence is submitted that implicates the merits of the case, the trial court reviews the relevant evidence to determine whether a fact issue exists. *Id.* This standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c), as it places the burden on the governmental unit to present evidence that the trial court lacks subject matter jurisdiction. *Id.* at 228; *see also* Tex. R. Civ. P. 166a(c). If the governmental unit meets its initial burden, the burden then shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. We take as true all evidence that is favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea because fact questions must be resolved by the finder of fact. If the relevant undisputed evidence negates jurisdiction, the trial court must grant the plea. *Id.* at 227-28.

13

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's sex, the employer discriminates in any manner against an individual as to the terms, conditions, or privileges of employment, or limits, segregates, or classifies an employee in a manner that would deprive or tend to deprive an individual of any employment opportunity, or adversely affect in any other manner the status of an employee. Tex. Lab. Code Ann. § 21.051. The TCHRA provides a limited waiver of governmental immunity when a governmental unit has discriminated in any way against an employee based on sex or other protected classification. *See id.* § 21.051, 21.002(8)(D); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). The waiver of governmental immunity contained in the TCHRA only applies if the plaintiff alleges a violation within the scope of the statute. *Garcia*, 372 S.W.3d at 636. Sexual harassment is a form of sex discrimination that is prohibited by the TCHRA and Title VII of the Civil Rights Act of 1964. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445-46 (Tex. 2004). "Because the TCHRA is intended to execute the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, analogous federal statutes and cases guide state courts in interpreting the TCHRA." *Kokes v. Angelina College*, 148 S.W.3d 384, 391 (Tex. App.—Beaumont 2004, no pet.) (citing *Quantum Chem.*

*Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001)); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Anderson v. Houston Cmty. College Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.). An employee complaining of harassment by a supervisor need not prove the fifth element. *Id.* In determining whether a hostile work environment exists, courts look to all the circumstances, including the frequency of the discriminatory conduct and whether it unreasonably interfered with the employee's work performance. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010). To succeed on a hostile work environment claim, the plaintiff must show ongoing harassment based on the protected characteristic that was so sufficiently severe or pervasive that it altered the conditions of her employment and created an abusive work environment. *Anderson*, 458 S.W.3d at 647; *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.—Texarkana 2008, pet. denied).

A claim of sexual harassment is actionable when the plaintiff shows that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive that a hostile or abusive work environment existed. *Waffle House, Inc.,* 313 S.W.3d at 806; *Garcia v. Schwab*, 967 S.W.2d 883, 885, 887 (Tex. App.—Corpus Christi 1998, no pet.). The work environment must be one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so. *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App.—Eastland 2005, pet. denied). In determining whether a work environment is sufficiently hostile or abusive, we must review the totality of the circumstances, including (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Id.* Incidental or occasional comments, discourtesy, rudeness, or isolated incidents that are not extremely serious are not discriminatory changes in the terms and conditions of employment. *Id.* Because the availability of a hostile work environment claim is intended to prevent conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace, a claim cannot be based solely on conduct that wounds or offends but that does not hinder an employee's performance. *Id.* at 490.

16

Although Boudreaux's evidence shows that she was subjected to repeated and ill-mannered behavior, the instances that she alleges do not amount to the quality or severity of misbehavior sufficient to subject Boudreaux to hostile or abusive conditions which materially alter her conditions of employment. *See Tex. Dept. of Family & Protective Servs. v. Whitman*, 530 S.W.3d 703, 712-14 (Tex. App.—Eastland 2016, no pet.); *Garcia*, 967 S.W.2d at 887. Boudreaux has not shown that Vore calling her a liar was based on her gender or was part of a pattern of gender-based harassment. *See Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 758 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Additionally, the mere utterance of an epithet that engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to create a hostile work environment. *Id.* at 757. We conclude that all of Boudreaux's evidence, taken together, failed to demonstrate that her working conditions were so severely degraded and fraught with discriminatory hostility or abuse as to warrant invocation of the TCHRA's protections. *See Garcia*, 967 S.W.2d at 887; *see also McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 763-64 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Consequently, the City's immunity from suit was not waived, and the trial court erred in denying the City's plea to the jurisdiction. We sustain the City's issues, reverse the trial court's order denying the City's plea, and render judgment

17

dismissing Boudreaux's claims against the City for lack of subject matter jurisdiction.

Vore's Motion to Dismiss

In issue one, Vore complains that the trial court erred in denying his motion to dismiss under the TCPA, because he is entitled to dismissal based on his affirmative defenses of official and legislative immunity. In issue two, Vore argues that Boudreaux failed to state a prima facie case for her defamation and defamation *per se* claims. In issue three, Vore argues that Boudreaux failed to state a prima facie case for her claim of intentional infliction of emotional distress and that the tort is barred as a "gap-filler" tort. In issue four, Vore complains that the trial court improperly awarded attorney's fees to Boudreaux.

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002[2]; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). The TCPA permits a litigant to seek dismissal of

---

[2]We cite to the current version of section 27.002 because it was not affected by the 2019 amendments.

a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.003(a), 2011 Tex. Gen. Laws 960, 962. The party moving to dismiss under the TCPA bears the initial burden of demonstrating that he has been sued for exercising his First Amendment rights. Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.005(b), 2011 Tex. Gen. Laws 960, 962. Once the moving party establishes that the suit implicates First Amendment rights, the burden shifts to the party bringing the action, who must then adduce "clear and specific evidence" of a prima facie case as to each element of the claim. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)[3]; *In re Lipsky*, 411 S.W.3d 530, 586-87 (Tex. App.—Fort Worth 2013, orig. proceeding); *mand. denied*, 460 S.W.3d 579 (Tex. 2015). In determining whether the claim should be dismissed, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.006(a), 2011 Tex. Gen. Laws 960, 962. "Under [s]ection 27.006 of the Act, the trial court may consider pleadings as evidence." *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.). The Supreme Court

---

[3]We cite to the current version of section 27.005(c) because the 2019 amendments do not affect this appeal.

19

has noted that "[c]lear and specific evidence is not a recognized evidentiary standard[]" and "[a]lthough it sounds similar to clear and convincing evidence, the phrases are not legally synonymous." *In re Lipsky*, 460 S.W.3d at 589. In addition, the Supreme Court noted that the term "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590.

The Supreme Court explained that under the TCPA, general allegations that merely recite the elements of a cause of action will not suffice; rather, "a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 590-91. Although the TCPA "initially demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." *Id.* at 591. If the non-movant meets his burden, the movant may still obtain a dismissal by establishing each essential element of a valid defense to the claims. Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 2, sec. 27.005(d), 2013 Tex. Gen. Laws 2501, 2501.

The issue of whether Vore met his burden of establishing that Boudreaux's claims related to Vore's exercise of his First Amendment rights is a legal question that we review *de novo* on appeal. *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved*

20

*on other grounds*, *In re Lipsky*, 460 S.W.3d at 587, 591. Based upon Boudreaux's allegations and Vore's response that his statement was made in connection with a matter of public concern, we conclude that Vore established that Boudreaux's claims related to Vore's exercise of his First Amendment rights. This brings Boudreaux's claims within the purview of the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3)[4] (stating that the exercise of free speech "means a communication made in connection with a matter of public concern"); Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.001(7), 2011 Tex. Gen. Laws 960, 961 (defining a matter of public concern).

Having concluded that Vore's statement constitutes protected conduct under the TCPA, we must next determine whether Boudreaux met her burden to establish, by clear and specific evidence, a prima facie case for every essential element of her claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). In her pleadings, Boudreaux alleges that Vore's statement constituted defamation, defamation *per se*, and slander. According to Boudreaux, Vore's statement was false; accused her of engaging in a conflict of interest, fraud, nepotism, or other misconduct; imperiled

---

[4]We cite to the current version of section 27.001(3) because it was not affected by the 2019 amendments.

her ability to maintain a bond; and jeopardized her ability to hold or maintain any government job.

Defamation is a false statement made about a plaintiff that is published to a third person without legal excuse and which damages the plaintiff's reputation. *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). "Slander is orally communicated defamation." *Id.* The elements of a defamation cause of action include (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement; and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). The plaintiff must plead and prove damages unless the defamatory statements are defamatory *per se*. *In re Lipsky*, 460 S.W.3d at 593. Because defamation *per se* involves statements that are obviously harmful to a plaintiff's reputation, general damages may be presumed. *Id.*

To be considered defamation *per se*, "the statement must (1) impute the commission of a crime; (2) impute contraction of a loathsome disease; (3) cause injury to a person's office, business, profession, or calling; or (4) impute sexual misconduct." *Moore*, 166 S.W.3d at 384. Taken by itself, Vore's statement is not

22

defamatory *per se*. *See Moore*, 166 S.W.3d at 386; *Billington v. Houston Fire & Cas. Ins. Co.*, 226 S.W.2d 494, 496 (Tex. Civ. App.—Fort Worth 1950, no writ.). The word "liar" does not impute the commission of a crime, nor does the word, taken by itself and without explanation, tend to affect a plaintiff injuriously in her office, profession, or occupation. *See Hancock v Variyam*, 400 S.W.3d 59, 66-67 (Tex. 2013); *Billington*, 226 S.W.2d at 496. On its face, Vore's statement is mere name calling and a general disparagement equally discreditable to all persons, and not a direct accusation that Boudreaux lacks a peculiar or unique skill that is necessary for the proper conduct of a city secretary. *See Hancock*, 400 S.W.3d at 66-67; *Moore*, 166 S.W.3d at 386.

We conclude that Vore's statement does not impute the commission of a crime or affect Boudreaux's fitness for being a city secretary and is not defamatory *per se*. *See Hancock*, 400 S.W.3d at 67; *Moore*, 166 S.W.3d at 384. Accordingly, the trial court erred by concluding as a matter of law that Boudreaux established by clear and specific evidence a prima facie case for her claim of defamation *per se*. *See In re Lipsky*, 460 S.W.3d at 590. Having concluded that Vore's statement is not defamatory *per se*, we next consider whether the statement is defamatory. Boudreaux argues that Vore's statement was capable of a defamatory meaning because in viewing Vore's statement as a whole, it is abundantly clear to a person of

23

ordinary intelligence that the gist of Vore's statement was that he was falsely accusing her of corruption, nepotism, and fraudulent dealings. Boudreaux's "gist" argument relies on statements made in Vore's pleadings and in his deposition. In concluding that Vore's statement was capable of being interpreted by a reasonable third party to encompass potentially criminal conduct, the trial court relied on Vore's pleadings and deposition testimony. Vore argues that his statement did not accompany any specific accusation of theft or other misconduct, and in her deposition, Boudreaux testified that Vore never called her a thief or said that she was engaging in nepotism or fraud. According to Vore, Boudreaux failed to offer clear and specific evidence showing that his statement concerning concrete removal allows a reasonable reader to infer that Boudreaux had engaged in theft or fraud.

The question of whether a publication is capable of a defamatory meaning is initially a question of law for the court. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 155 (Tex. 2004); *Musser v. Smith Protective Servs, Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). In establishing the defamatory meaning of a publication, courts analyze the gist of the publication as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it. *D Magazine Partners, L.P., v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "The surrounding circumstances are the setting in which the alleged slanderous statement is spoken,

24

consisting of the context of the statement and the common meaning attached to the statement." *Moore*, 166 S.W.3d at 385. Common sense requires courts to understand the statement as ordinary people would and not based on how the plaintiff would construe the statement. *Id.*

In analyzing the gist of Vore's statement as a whole in light of the surrounding circumstances in which it was spoken, we conclude that a person of ordinary intelligence would not have perceived that Vore was asserting that Boudreaux had actually committed a crime. *See Rosenthal*, 529 S.W.3d at 434; *Moore*, 166 S.W.3d at 385. Boudreaux's subjective perceptions and characterization of the alleged defamatory statement cannot form the basis of her defamation claim, because the defamatory meaning inquiry is objective rather than subjective. *See Rehak Creative Servs., Inc.*, 404 S.W.3d at 728 n. 6; *Vice v. Kasprzak*, 318 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Because evidence of intent must arise from the publication itself, the question is whether the publication indicates by its plain language that Vore intended to convey the meaning that Boudreaux alleges. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 635-36 (Tex. 2018). Importantly, Vore cannot be subjected to liability for subjectively intending to convey a defamatory meaning that the publication itself does not actually support. *See id.* at 636. Vore's "liar" statement does not objectively demonstrate an intent to

25

accuse Boudreaux of corruption, nepotism, and fraudulent dealings as alleged by Boudreaux.

We conclude that Vore's statement is not reasonably capable of a defamatory meaning. *See Rosenthal*, 529 S.W.3d at 434; *Moore*, 166 S.W.3d at 385; *see also Arant v. Jaffe*, 436 S.W.2d 169, 176-77 (Tex. Civ. App.—Dallas 1968, no writ). Because Boudreaux has failed to establish, by clear and specific evidence, a prima facie case of defamation, we further conclude that the trial court erred by concluding as a matter of law that Boudreaux had established a prima facie defamation case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590. We sustain issue two.

In issue three, Vore argues that Boudreaux failed to state a claim for her intentional infliction of emotional distress and that tort is barred as a "gap-filler" tort. To recover damages for the intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). The Texas Supreme Court has set a high standard to meet the element of extreme and outrageous conduct, holding that "the element is only satisfied if the conduct is 'so

26

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 714 (Tex. App.—Amarillo 2018, pet. denied) (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)). We conclude that because Boudreaux failed to show that Vore's conduct was extreme and outrageous, she has not established, by clear and specific evidence, a prima facie case on her claim for intentional infliction of emotional distress. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Batra*, 562 S.W.3d at 714; *Moore*, 166 S.W.3d at 387. We sustain issue three. Because Boudreaux failed to establish a prima facie case for each essential element of her claims, we need not address issues one and four. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); Tex. R. App. P. 47.1.

We conclude that because Vore established by a preponderance of the evidence that Boudreaux's claims are based on, relate to, or are in response to his exercise of free speech, and because Boudreaux failed to establish a prima facie case for each essential element of her claims, the trial court erred by denying Vore's motion to dismiss Boudreaux's claims under the TCPA. Accordingly, we reverse the trial court's ruling and remand Boudreaux's claims against Vore to the trial court with instructions to enter judgment dismissing all of Boudreaux's claims against

Vore and, after notice and a hearing, to award Vore his damages and costs as provided by the TCPA. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.009(a), 2011 Tex. Gen. Laws 960, 962-63.

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.

_____
STEVE McKEITHEN
Chief Justice

Submitted on January 17, 2020
Opinion Delivered March 26, 2020

Before McKeithen, C.J., Horton and Johnson, JJ.